UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JOHN WILLIAM BARRETT                                                                    PLAINTIFF

V.                                                       CIVIL ACTION NO. 3:13-cv-1045-CWR-FKB

HEALTH ASSURANCE, INC., ET AL.                                                   DEFENDANTS

REPORT AND RECOMMENDATION

This cause is before the undersigned for a report and recommendation as to Defendants' Motions for Summary Judgment [63, 65] and Plaintiff's Motion for Conference Call [62]. Having considered the entire record in this matter, the undersigned recommends that Defendants' motions be granted and that Plaintiff's motion be denied, for the following reasons.

BACKGROUND AND HISTORY

Plaintiff filed this lawsuit *pro se* and pursuant to 42 U.S.C. § 1983, challenging the conditions of his confinement at East Mississippi Correctional Facility (EMCF). [1]. During the relevant time period, Defendant Health Assurance LLC was the medical provider for EMCF through a private contract. Defendant Dr. Carl Faulks worked for Health Assurance, as did Defendants Carl and Michael Reddix, Defendant Ollie Little, Defendant Patricia Parrott, Defendant Kristen Curry, and Defendant Dr. Maurice McShan.[1] The Court held an omnibus or *Spears* hearing in this matter on August 28, 2014, at which Plaintiff was afforded the opportunity to fully explain his claims.[2]

---

[1]Another Defendant, Ashmore, was listed in the original complaint but Plaintiff voluntarily dismissed his claims against her. [19].

[2]*See Spears v. McCotter*, 766 F.2d 179, 180 (5th Cir. 1985).

1

Plaintiff alleges that Defendants denied him medical treatment, as well as medications he needed, causing him unnecessary pain. Plaintiff claims that once Health Assurance took over health care at EMCF in mid-July 2012, it took thirty days for Plaintiff to get his medications. Plaintiff also alleges that he frequently runs out of medication and it takes several days for him to get it again, due to Defendants' failure to properly stock the facility pharmacy. Finally, Plaintiff contends that he has to wait months to see a specialist. Plaintiff claims that Defendants' failure to provide medical attention has caused him to be in severe pain and has caused his blood pressure to be at dangerously high levels for extended periods of time.

Defendant Dr. Carl Reddix filed a motion for summary judgment [63], arguing that Plaintiff's claims against him should be dismissed because Plaintiff has failed to demonstrate that Dr. Carl Reddix was in any manner involved in Plaintiff's medical treatment or alleged lack thereof at EMCF. The remaining Defendants moved for summary judgment [65] on the basis that Plaintiff has not demonstrated that any Defendant was deliberately indifferent to Plaintiff's serious medical need.

SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the moving party can show that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *United States v. Renda Marine, Inc.,* 667 F.3d 651, 655 (5th Cir. 2012) (quoting Fed.R.Civ.P. 56(a)). "A factual dispute is 'genuine' where a reasonable party would return a verdict for the nonmoving party." *Chiu v. Plano Indep. Sch. Dist.,* 339 F.3d 273, 282 (5th Cir. 2003) (quoting *Lukan v. North Forest Indep. Sch. Dist.,* 183 F.3d 342, 345 (5th Cir. 1999)). When considering a summary judgment motion, a court "must review all facts and evidence in the light most

favorable to the non-moving party." *Juino v. Livingston Parish Fire Dist. No. 5,* 717 F.3d 431, 433 (5th Cir. 2013). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003) (citing *Bridgmon v. Array Sys. Corp.,* 325 F.3d 572, 577 (5th Cir. 2003); *Hugh Symons Group, plc v. Motorola, Inc.,* 292 F.3d 466, 468 (5th Cir. 2002)).

## DELIBERATE INDIFFERENCE

Plaintiff alleges that Defendant Health Assurance did not have sufficient medications stocked and harmed him by their failure to supply Plaintiff's medications. [1] at 8. Plaintiff claims Dr. Faulks refused to prescribe the correct medications for him. *Id.* at 9. Plaintiff's allegation against Dr. Michael Reddix[3] is that he established policies that caused the delay in Plaintiff's treatment. *Id.* at 10. Plaintiff's claim against Little is that he refused to properly stock the necessary medications for Plaintiff. *Id.* at 11. Plaintiff also claims that Little failed to set up outside appointments and failed to properly supervise the nursing staff. *Id.* Plaintiff claims that Parrot, who was Dr. Faulks's office administrator, failed to notify Little regarding prescribed medications, failed to notify Little of Dr. Faulks's referrals, and refused to allow Plaintiff to see Dr. Faulks when he needed to, instead requiring Plaintiff to complete a sick call request. *Id.* at 12. As for Curry, Plaintiff alleges that she would not put him on the referral list. *Id.* at 13. Finally, with respect to Dr. McShan, Plaintiff alleges that Dr. McShan only comes to EMCF once a month, which he claims is not enough. Plaintiff also alleges that Dr. McShan prescribes insufficient amounts of pain medication. *Id.* at 14.

---

[3]Plaintiff's claims against Dr. Carl Reddix will be addressed *infra*.

The right to adequate medical care during incarceration is a clearly established constitutional right. *Estelle v. Gamble*, 429 U.S. 97 (1976). However, though Plaintiff alleged in his complaint that Defendants were deliberately indifferent to his serious medical needs, which is the appropriate standard, he has failed to allege sufficient facts to support such a claim against any Defendant. Plaintiff has not demonstrated that there was a particular institution-wide policy implemented by any Defendant which deprived him of reasonable medical care. Nor has Plaintiff demonstrated any personal involvement in the alleged denial of medical care by any Defendant that rises to the level of a constitutional violation.

Plaintiff must show both that Defendants were aware of facts from which an inference could be drawn that Plaintiff faced a substantial risk of serious harm and that they drew that inference. *See, e.g., Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). Plaintiff has failed to do either. The record reflects, as will be detailed *infra*, and Plaintiff admits, that Plaintiff was provided medical treatment and medications. Failed medical treatment, negligence, neglect, nor medical malpractice give rise to a claim under § 1983. *Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1991). Plaintiff's allegations are not sufficient to survive the motion for summary judgment.

The medical records submitted by Defendants in support of their motion [65-2] reflect, *inter alia*, the following medical treatment[4] was provided to Plaintiff from the time Defendant Health Assurance took over until this suit was filed:

 \*  8/27/2012–Dr. Faulks re-started all the medications Plaintiff had been taking

---

[4]This listing does not reflect all of Plaintiff's medical treatment, but only that related to the pain, hernia, medication and blood pressure issues referenced in the complaint and at the hearing. He was seen regularly for other issues as well.

except Ultram, which Dr. Faulks noted could produce opiate dependency.

* 9/14/2012–Plaintiff was examined and his blood pressure was 120/80.

* 9/19/2012–Dr. Faulks received a C-Spine X-ray for Plaintiff.

* 10/18/2012--Plaintiff was examined by a nurse pursuant to a sick call request completed 10/15/12.

* 10/25/2012–Dr. Faulks reviewed Plaintiff's abdominal CT scan and found it abnormal, though no hernia was defined.

* 11/6/2012–Dr. Faulks saw Plaintiff about numbness in both hands, and neck pain radiating to left arm. Plaintiff's blood pressure was 161/105. Dr. Faulks referred Plaintiff to a neurologist. Dr. Faulks prescribed Neurontin 800mg twice a day for 2 months and a Kenalog 20mg injection.

* 11/14/2012–Dr. Faulks saw Plaintiff and ordered lab work. Plaintiff's blood pressure was 164/101.

* 11/29/2012–Dr. Faulks saw Plaintiff and his blood pressure was 138/83. Dr. Faulks referred Plaintiff to "PM physician" (pain management-Dr. McShan) to determine if referral to neurologist was indicated for evaluation of possible Carpal Tunnel Syndrome. Dr. Faulks also referred Plaintiff to Dr. Yelverton for evaluation of Plaintiff's right upper quadrant pain. Plaintiff's blood pressure was also noted to be 150/97 on 11/29/12.[5]

* 11/29/2012–Dr. McShan saw Plaintiff. Plaintiff's blood pressure was 148/81. Dr. McShan diagnosed radiculopathy and treated Plaintiff with one dose of Decadron.

---

[5]It appears that Plaintiff's blood pressure was taken twice on 11/29/2012. [65-2] at 43, 45.

\*	1/7/2013–Plaintiff saw Dr. Yelverton at Lakeland Surgical Clinic for right upper quadrant pain.  Dr. Yelverton found some tenderness in right inguinal area but no recurrent hernia palpated and no evidence of hydrocele or other abnormality.  Dr. Yelverton obtained an ultrasound of the gallbladder and referred Plaintiff to Dr. Matthew Runnels for consideration of an EGD, and other studies.

\*	1/8/2013–Dr. Faulks kept Plaintiff on Neurontin 800mg twice a day and referred him to Dr. McShan for evaluation of pain complaints.

\*	1/28/2013–Dr. Faulks decreased Plaintiff's Neurontin to 400mg twice a day for 8 weeks and ordered Celebrex 100mg twice a day for 6 months.

\*	2/11/2013–Dr. Yelverton at Lakeland Surgical Clinic noted that Plaintiff was undergoing a work-up for right upper quadrant pain.  Plaintiff had a negative CT scan of the abdomen, had a normal ultrasound of his gallbladder and a normal HIDA scan.  Plaintiff was scheduled for EGD.

\*	2/16/2013–Dr. Faulks ordered additional medications in connection with Plaintiff's endoscopy.

\*	2/19/2013--Dr. Runnels' EGD report for Plaintiff shows duodenitis, diminutive duodenal bulb nodule, gastritis and moderate hiatal hernia.

\*	2/27/2013–Dr. Faulks saw Plaintiff and Plaintiff's blood pressure was 132/89.  Dr. Faulks added new medications–Prilosec and CVS Vitamin E.

\*	3/5/2013–Dr. Faulks saw Plaintiff and Plaintiff's blood pressure was 133/90.  Dr. Faulks added new medications for an ear infection and added Ultram.

\*	3/16/2013–A nurse saw Plaintiff and his blood pressure was 116/60.

\*      3/27/2013–Dr. Faulks saw Plaintiff for pain complaints and Plaintiff's blood pressure was 134/88.

\*      4/25/2013–Dr. Faulks saw Plaintiff for pain complaints. Dr. Faulks added Neurontin and Kenalog.

\*      5/28/2013–Dr. McShan saw Plaintiff for pain in arms and neck. His blood pressure was 130/66. Dr. McShan prescribed Motrin 800mg twice a day for 2 weeks, Prednisone 20mg daily for 4 days and Neurontin 300mg for 10 days.

\*      6/11/2013–Dr. Faulks noted that Motrin had been discontinued and that Dr. McShan would order the Prednisone as indicted.

\*      6/24/2013–Dr. Faulks saw Plaintiff for radiating pain and ordered injection of Ketorolac 60mg. Plaintiff's blood pressure was 173/106.

\*      6/25/2013–Dr. Faulks ordered Kenalog 40mg when available for Plaintiff's pain and Lisinopril/hctz 10/12.5 mg tablets, once a day for 12 months.

\*      6/28/2013–Note from Dr. Faulks: "Received sick call request from the IM for treatment. Discussed with medical staff. IM suspected of malingering      by the staff for secondary gain." "Refer IM to PM for follow up therapy. Must have consistency of treatment with this IM for better outcome."

\*      6/30/2013–Plaintiff received an injection of Kenalog and Dr. Faulks referred Plaintiff to Dr. McShan.

\*      8/31/2013–Plaintiff seen for chest pain. Blood pressure was 164/98. Referred to cardiologist.

\*      9/18/2013–Plaintiff seen by nurse. Blood pressure was 118/84.

\*       9/24/2013–Dr. McShan saw Plaintiff for pain complaint. His blood pressure was 159/100. Dr. McShan increased Neurontin from 300 mg to 600mg twice a day with 3 refills and increased Lisinopril to 20-12.5 mg tabs twice a day.

Also, though Plaintiff claimed that he did not get his medications for 30 days starting on July 19, the facility records indicate that Plaintiff did receive most of his medications during that time period, though not the pain killers. [70-1] at 1-2.

In response to the motion, Plaintiff argues the medical records provided reflect gaps in his receipt of medication, are incomplete in that they do not include all his sick call requests, are inaccurate and have been falsified. [70]. Plaintiff cannot, however, dispute that he has received significant medical attention and medication. In opposition to the motion for summary judgment, Plaintiff submitted voluminous medical records. [70-1 to 70-7]. While it is clear that Plaintiff does not believe he received enough treatment, it is also clear that Defendants monitored Plaintiff's condition and provided medical treatment. As noted *supra*, the records Plaintiff submitted reflect that he did receive several medications between mid-July and mid-August 2012, though he did not get the Neurontin and Ultram he clearly wanted. [70-1] at 1-2. In a letter Plaintiff wrote the warden on August 22, 2012, he stated:

> ... who ever renders the medical treatment here now, took over, on the 19th of July 2012, I had already been trimmed down on my medication by Dr. Faulk, then I saw... Dr. Reddix, and he cuts off all my pain meds on the 19th of August 2012, except 400 mg of nuerotten (sic) once a day.

[70-1] at 71-72. As noted in the records described *supra*, Dr. Faulks had concerns about Plaintiff being addicted to pain medication, and the medical staff had concerns regarding whether Plaintiff was malingering. It is clear that Plaintiff's medical care was closely monitored. None

8

of the issues of which Plaintiff complains–occasional missed doses, occasional lapsed prescriptions and continuing pain–establish a constitutional violation without more. *See, e.g., Stockwell v. Kanan*, 442 F. App'x 911, 913 (5th Cir. 2011). Plaintiff's allegations against each Defendant are unsupported by the record.

## DR. CARL REDDIX

There is no *respondeat superior* liability under Section 1983. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Plaintiff must demonstrate that Dr. Carl Reddix's own actions resulted in a violation of Plaintiff's constitutional rights. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009). Plaintiff has failed to do so. Plaintiff testified during the omnibus hearing that he sued Dr. Carl Reddix because: "He is the CEO of Health Assurance." [63-1] at 8. This is precisely the type of vicarious liability which may not be asserted pursuant to Section 1983. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability."). Though Plaintiff alleges in his complaint that policies Dr. Reddix issued caused a constitutional deprivation, he has failed to substantiate his allegation by specifically identifying any such policy or demonstrating that Dr. Reddix was responsible for implementing or enforcing any such policy.

The only other claim Plaintiff made concerning Dr. Carl Reddix was that:

> He came to the facility, Your Honor, one time, and he examined me, and he ordered me some stuff, and he never came back. I never got what he ordered. I never seen the man again but one time, and that was in August of 2012. My understanding was that Dr. Reddix was assaulted or threatened at that facility, and he felt unsafe there. So he didn't come back. But he did send Dr. McShan in his place.

[63-1] at 8.

Defendant Carl Reddix asserts that the records reflect that Plaintiff may have been seen

by Dr. Michael Reddix, but never by Dr. Carl Reddix.  However, even if Dr. Carl Reddix did see Plaintiff once, prescribe medication, and then assign another doctor, these allegations do not state a claim against Dr. Carl Reddix.  Dr. Reddix would not have been responsible for actually filling the prescription or taking it to Plaintiff, even if Plaintiff did not in fact receive the medication.  Plaintiff has presented no evidence that anything Dr. Carl Reddix allegedly did, or was responsible for, violated Plaintiff's constitutional rights, and Dr. Carl Reddix is entitled to judgment in his favor.  *See, e.g., Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999).

## PLAINTIFF'S MOTION

Plaintiff filed a motion requesting a conference with the Court [62].  By his motion, Plaintiff asserted that Defendants had not produced all medical records.  However, in the same motion, Plaintiff indicated that Defendants stated they produced all medical records they had.  The medical records produced are the only documents Plaintiff has requested which the Court deems relevant to this case.  Even if some reports from outside providers such as scans are missing, the records submitted described the treatment provided by Defendants, as well as medications both prescribed and given to Plaintiff.  The medical records provided are sufficient to resolve the issues before the Court.  Accordingly, Plaintiff's motion should be denied.

## CONCLUSION

Based on the foregoing, the undersigned recommends that Defendants' motions [63, 65] be granted and that the complaint be dismissed with prejudice.  The undersigned recommends that Plaintiff's motion [62] be denied.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation

within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. §636.

    Respectfully submitted, this the 4th day of March, 2015.

                                                           /s/ F. Keith Ball  
                                                           UNITED STATES MAGISTRATE JUDGE